IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| LORRAINE REGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 115-087 |
| | ) | |
| STATE OF GEORGIA; GEORGIA | ) | |
| DEPARTMENT OF CORRECTIONS; | ) | |
| GROVETOWN MEDICAL PRISON | ) | |
| (AUGUSTA); BRIAN OWENS; | ) | |
| DENNIS BROWN; ELIZABETH | ) | |
| ROBERTS; ED SPRATT; GAIL | ) | |
| THOMAS; JACQUELINE | ) | |
| CHAMPION; VERONICA SAMUELS; | ) | |
| AMICINA MACK; SHUNETTE | ) | |
| BURTON; MILDRED GILLIAM; | ) | |
| and RICHARDINE MOORE, | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Plaintiff commenced the above-captioned employment discrimination case *pro se* and is proceeding *in forma pauperis* ("IFP"). On August 21, 2015, the Court directed Plaintiff to amend her complaint due to multiple deficiencies within her original complaint. (Doc. no. 15.) On October 14, 2015, Plaintiff amended her complaint in compliance with the Court's August 21st Order. (Doc. no. 21.)

Because she is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential Defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S.

519, 520-21 (1972), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i) & (ii).

I.   SCREENING OF THE COMPLAINT

  A.   BACKGROUND

Plaintiff names fourteen defendants in her amended complaint: the State Of Georgia; Georgia Department of Corrections; Grovetown Medical Prison (Augusta); Brian Owens; Dennis Brown; Elizabeth Roberts; Ed Spratt; Gail Thomas; Jacqueline Champion; Veronica Samuels; Amicina Mack; Shunette Burton; Mildred Gilliam; and Richardine Moore. The individual defendants who worked with Plaintiff at Augusta State Medical Prison. (Doc. no. 21, pp. 4-8.) Plaintiff's complaint spans an almost two-year period between April 1, 2011 and March 8, 2013, when she was "ultimately dismissed and/or placed on permanent leave from her employment." (Id. at 22.)

Plaintiff alleges she was dismissed but left on the payroll to prevent her from filing a discriminatory discharge action. (Id.) Plaintiff extensively details alleged mistreatment by her co-workers, primarily Defendants Mack, Burton, Samuels, and Thomas. For example, Plaintiff alleges that on May 1, 2011, she filed a complaint due to Defendants Mack and Burton making derogatory remarks to her and improperly taking food from the jail. (Id. at 9.) Plaintiff alleges she raised these concerns with Defendant Champion, the director of food services, who chastised her for bringing this to her attention. (Id.) Her complaint describes various similar incidents where she complained about her managers violating various prison regulations only to be chastised by prison administrators for making these complaints. (Id. at

2

9-18.)

Among the fifty-five or so separate incidents she alleges, approximately eight involve racial slurs, epithets, or racially motivated conduct. (Id. at 9-18.) Plaintiff alleges she was the only Caucasian working on her shift in the food services department. (Id. at 10-11.) On June 14, 2011, Plaintiff alleges that Defendant Mack stated to her "you know we get rid of whites" in response to a complaint Plaintiff made about Defendant Mack possessing contraband. (Id. at 10.) This was approximately two months after Plaintiff began working at the prison. (Id. at 22.) On June 16, 2011, Plaintiff alleges that Defendant Samuels stated, "I am tired of your white ass," after she complained of her locker being broken into by an inmate. (Id. at 11.) On that same day, Plaintiff alleges she overheard Defendant Burton tell Defendant Thomas she was tired of Defendant's "white miserable ass." (Id.)

Plaintiff describes an incident on November 19, 2011, where after a mandatory meeting to discuss Plaintiff's complaints about the defendants, Defendant Mack stated "fuck you Rega" and Defendant Samuels threatened to fire any inmate from food services if they helped Plaintiff. (Id. at 13.) Two days later, Defendant Samuels told Plaintiff in regards to her journal that she "better get rid of that dam[n] ledger, or [her] white ass [would] be gone soon." (Id. at 14.) Due to the mistreatment, Plaintiff filed a harassment complaint and wrote letters to the Georgia Attorney General's office, the Georgia Department of Corrections, and internal human resources on November 22, 2011. (Id. at 13.)

Plaintiff also alleges that, on January 16, 2012, Defendant Thomas filed a false negative performance report about Plaintiff losing her keys. (Id. at 21.) Plaintiff alleges this report was filed for discriminatory reasons. (Id.) On February 9, 2012, Defendant Thomas

3

stated "your white ass is on my last nerve" to Plaintiff after she refused to change her statement that Defendant Burton was hitting inmates. (Id. at 15-16.) Plaintiff alleges that, on March 28, 2012, she lodged a complaint due to Defendant Mack continuing to use racial slurs such as "white bitch." (Id. at 17.)

Finally, Plaintiff alleges that on March 1, 2013, she was so ridiculed for refusing to change a statement about Defendant Gilliam she left the facility and drove to a hospital due to a panic attack. (Id. at 18.) This was shortly after Defendant Gilliam filed a contrived negative performance report alleging Plaintiff passed tools to inmates in a common but apparently improper manner. (Id. at 22.) Plaintiff took leave under the Family and Medical Leave Act until May 5, 2013, after which she was discharged when her doctor did not release her back to work. (Id. at 43.) However, this complaint allegation conflicts with Plaintiff's contrary allegation that she was dismissed and placed on permanent leave by the prison but left on the payroll in order to avoid a discriminatory discharge claim. (Id.)

Plaintiff alleges Defendants' mistreatment of her was racially motivated and in retaliation for her filing constant complaints about their conduct, some of which involved racial epithets. (Id. at 22-37.) Plaintiff further alleges her ultimate dismissal from the job was part of a scheme by defendants to file contrived performance complaints until Plaintiff left or was terminated. (Id. at 20, 22.) Plaintiff exhausted her administrative remedies through the Equal Employment Opportunity Commission and timely filed suit within sixty days of receiving her right to sue letter. (Id. at 49.)

Liberally construing Plaintiff's allegations in her favor and granting her the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that Plaintiff

4

has arguably stated a claim for racial discrimination, hostile work environment, and retaliation under Title VII against Defendant Georgia Department of Corrections. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (stating elements of hostile work environment are (1) plaintiff belongs to protected group; (2) plaintiff has been subject to unwelcome harassment; (3) harassment was based on protected characteristic of plaintiff; (4) harassment was sufficiently severe or pervasive to alter terms and conditions of employment and create discriminatorily abusive working environment; and (5) employer is responsible for such environment under either theory of vicarious or direct liability); Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997) (stating elements of retaliation claim are (1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities).

Plaintiff has also arguably stated a claim for racial discrimination, hostile work environment, and retaliation under 42 U.S.C. § 1983 for violations of 42 U.S.C. § 1981 against Defendants Thomas, Champion, Samuels, Mack, Burton, Gilliam, and Moore. Melton v. Nat'l Dairy LLC, 705 F. Supp. 2d 1303, 1315 (M.D. Ala. 2010) ("Thus, § 1981 provides a cause of action for race-based employment discrimination including wrongful termination, retaliation, and a racially hostile work environment.")

In a companion Report and Recommendation, the Court recommends dismissal of all claims against Defendant Grovetown Medical Prison (Augusta), Plaintiff's claims under 42 U.S.C. § 1985, her claims of wantonness, negligence, and negligent retention, her § 1981 and § 1983 claims against Defendants State of Georgia, Georgia Department of Corrections, Brian Owens, Dennis Brown, Ed Spratt, and Elizabeth Roberts, and her Title VII claims

5

against Defendants State of Georgia, Owens, Brown, Spratt, Roberts, Champion, Samuels, Mack, Gilliam, Burton, Moore, and Thomas. Further, the Court recommends dismissal of Defendants Grovetown Medical Prison (Augusta), State of Georgia, Owens, Brown, Spratt, and Roberts due to the recommended dismissal of all claims against them.

In addition, Plaintiff has filed a motion for service by the United States Marshall. Given that the Court is ordering service of the amended complaint as further outlined below, the Court **DENIES AS MOOT** Plaintiff's motion. (Doc. no. 22.)

## II. INSTRUCTIONS

**IT IS HEREBY ORDERED** that service of process shall be effected on Defendants Georgia Department of Corrections, Gail Thomas, Jacqueline Champion, Veronica Samuels, Amicina Mack, Shunette Burton, Mildred Gilliam and Richardine Moore. The United States Marshal is hereby directed to serve a copy of the amended complaint (doc. no. 21) and this Order by first-class mail and request that the defendants waive formal service of the summons. Fed. R. Civ. P. 4(d). Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for failure to return the waiver. Fed. R. Civ. P. 4(d)(2). A defendant whose return of the waiver is timely does not have to answer the complaint until sixty days after the date the Marshal mails the request for waiver. Fed. R. Civ. P. 4(d)(3). However, service must be effected within 120 days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant. Fed. R. Civ. P. 4(m). Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate the defendants to effect service.

6

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon the defendant, or upon its defense attorney if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court. Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendants or their counsel. Fed. R. Civ. P. 5; Loc. R. 5.1. Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number. Fed. R. Civ. P. 10(a). Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by the defendant. Upon being given at least five days notice of the scheduled deposition date, Plaintiff shall appear and permit her deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>. The defendant shall ensure that Plaintiff's deposition and any other depositions in the case are taken <u>within the 140-day discovery period</u> allowed by this Court's Local Rules.

While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Loc. R. 41.1. If Plaintiff wishes to obtain facts and information about the case from the defendant, Plaintiff must initiate discovery. <u>See</u>

generally Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery). Plaintiff should begin discovery promptly and complete it within four months after the filing of the last answer of a defendant named in the amended complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants. See Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions. Id. Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, she should also file a statement certifying that she has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Loc. R. 26.5.

Plaintiff must maintain a set of records for the case. If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve her response to the motion within fourteen days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Loc. R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

8

A response to a motion for summary judgment must be filed within twenty-one days after service of the motion. Loc. R. 7.5, 56.1. A failure to respond shall indicate that there is no opposition to the motion. Loc. R. 7.5. Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should a defendant file a motion for summary judgment, Plaintiff is advised that she will have the burden of establishing the existence of a genuine issue as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if she desires to contest the defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these: any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

SO ORDERED this 1st day of April, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA